**Larry FINCH, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 03–CF–1199.

District of Columbia Court of Appeals.

Submitted Jan. 6, 2005.
Decided Feb. 3, 2005.

Joseph Virgilio, was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Barbara J. Valliere, Ellen Chubin, and Rochelle E. Rubin, Assistant United States Attorneys, were on the brief for the United States.

Before WAGNER, Chief Judge, and SCHWELB and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

After a trial by jury, appellant Larry Finch was convicted of aggravated assault while armed and assault with a dangerous weapon. His appeal challenges the sufficiency of the evidence and the propriety of the prosecutor's rebuttal argument. We affirm.

## I.

We need not discuss at length the question of sufficiency of the evidence. Witnesses testified that appellant, who was intoxicated and behaving belligerently and abusively to those around him, disturbed Anthony Jones in Dupont Circle while Jones was playing chess. An argument ensued. Jones asked appellant to move away, but appellant instead moved closer, and as Jones turned to face him, appellant suddenly plunged a knife deep into Jones's neck. Jones required emergency surgery to repair two life-threatening lacerations to his right carotid artery. Viewed in the light most favorable to sustaining the verdict, *see Curry v. United States*, 520 A.2d 255, 263 (D.C.1987), this evidence plainly was sufficient to sustain appellant's convictions. The jury was entitled to credit

Jones and to disbelieve appellant's testimony that he acted in legitimate self-defense regardless of the facts that other eyewitnesses did not observe the stabbing; that Jones was impeached with prior statements concerning his encounter with appellant some years before the current incident; and that there was a question about the exact spot in Dupont Circle where the stabbing occurred.

## II.

Appellant's main contention is that the trial court erred in not granting him a mistrial after the prosecutor, in her rebuttal argument, improperly (1) expressed her personal opinions of his and other witnesses' credibility, (2) referred to him as a convicted thief and drug dealer, and (3) argued facts not in evidence. Appellant did not object to the comments in the first category, but he did object (unsuccessfully) to the comments in the latter two and moved for a mistrial on those grounds. We agree with appellant that some of the prosecutor's comments were objectionable. On balance, however, we conclude that the improprieties were not so prejudicial as to entitle appellant to reversal of his conviction.

The principles that govern our review of appellant's claim are well-settled. We start by determining whether the challenged comments were, in fact, improper. If they were, we must determine whether the trial judge erred or abused his discretion in responding to them. *See Irick v. United States*, 565 A.2d 26, 33 (D.C.1989).[1]

1. As we explained in *Irick*, although the complaint may be directed at the prosecutor,

> it is our function to review the record for legal error or abuse of discretion by the trial judge, not by counsel. Such error or

abuse may, to be sure, embrace not only incorrect rulings but also, on occasion, failure to intervene *sua sponte* when such intervention is called for, ... or to react with sufficient promptness and vigor to prosecu-

Our evaluation takes into consideration the context in which the comments were made, the gravity of the impropriety, its relationship to the issue of guilt, the effect of any corrective action taken by the judge, and the strength of the government's case. *See Chatmon v. United States,* 801 A.2d 92, 99 (D.C.2002). If an objection was preserved, this court may not affirm the convictions unless we are satisfied that the appellant did not suffer "substantial prejudice" from the prosecutor's improper comments. *See McGrier v. United States,* 597 A.2d 36, 41 (D.C.1991) (citing the test for harmless error stated in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). On the other hand, if the appellant failed to make a timely objection to the improper comments or the trial judge's ruling thereon, the appellant must establish "plain error" in order to secure a reversal. "When there has been no objection at trial, reversal of a conviction based on improper prosecutorial argument is appropriate only in a 'particularly egregious' case, when 'a miscarriage of justice would otherwise result.' " *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

 1. *Expression of personal opinions as to the credibility of witnesses.* We often have admonished that "[i]t is improper for a lawyer to express a *personal* opinion about a witness' veracity [or credibility] during arguments to the jury." *Id.* at 43 (emphasis added; citations omitted). Such comments are objectionable to the extent that they "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant ... [or] induce the jury to trust the Government's judgment rather than its own view of the evidence." *Young,* 470 U.S. at 18–19, 105 S.Ct. 1038. In contrast, while the distinction is not always clear in practice, it is proper for an advocate to argue that *the evidence* supports the conclusion that a witness is incredible. *See Irick,* 565 A.2d at 35–36. Thus,

> the key inquiry is whether the attorney is commenting on the evidence, which he may do, or expressing a personal opinion, which is taboo. A comment will be within the acceptable range as long as it is in the general nature of argument, and not an *outright* expression of opinion.

*Id.* at 36 (emphasis in original).

 Appellant claims that the prosecutor, in rebuttal argument, improperly expressed her personal opinion about the credibility of the complainant Anthony Jones,[2] a prosecution witness named Earl

---

torial misdeeds.... Nonetheless, absent some improper ruling or omission by the trial judge, we cannot ordinarily reverse a conviction, and our ultimate focus must therefore be on what the judge did or failed to do.

565 A.2d at 33 (internal citations and footnote omitted).

**2.** With regard to Jones, the prosecutor argued:

> Now, Mr. Jones, contrary to what defense counsel would have you believe, Mr. Jones did not overstate the evidence. He told you what he remembers and he told you what he *doesn't* remember. For example, he told you he didn't see a knife in the defen

dant's hand. He didn't see it coming. He also told you that at first, he didn't feel anything. *He was honest about that. He wasn't overstating what he remembered and what he did not.*

> And he acknowledged that he had an altercation with the defendant two to three years ago and even told you during that altercation, people had to come and separate the defendant and Mr. Jones. But he also told you that at that time, there was no physical contact between the two of them. There might have been had not other people intervened. So he told you all these things. He didn't have to tell you this. *This man, we submit is very credible.*

Daniels,[3] and appellant himself.[4] As to the italicized comments in footnotes 2 and 3 concerning Jones and Daniels, perhaps some of them were permissible as characterizations based on "logical inference from the evidence," *Hammill v. United States*, 498 A.2d 551, 557 (D.C.1985), but others were comparable to comments that this court has specifically disapproved. *See, e.g., Scott v. United States*, 619 A.2d 917, 927 (D.C.1993) (holding that it was improper for prosecutor to state in his closing argument that a witness "was open and up front and honest when he testified in this case to those things that had been transgressions in his life"). We think, however, that even if at least some of the prosecutor's remarks on the credibility of Jones and Daniels were infelicitous, they were relatively innocuous, for it is likely that the jury understood the prosecutor to be arguing merely that the particular testimony she cited evinced that Jones and Daniels were credible.

We take a more dim view of the prosecutor's comments about appellant, which are quoted in footnote 4. The italicized comments were unquestionably improper, because they did not discuss the evidence at all and articulated only the prosecutor's unsupported, not wholly coherent—but nonetheless forceful—assertions that appellant was lying to avoid admitting his guilt. *See, e.g., Jones v. United States*, 512 A.2d 253, 257 (D.C. 1986) ("This court has repeatedly condemned assertions by counsel that a witness has lied on the witness stand."); *Dyson v. United States*, 418 A.2d 127, 130 (D.C.1980). It is only modestly mitigating that the jury likely did not imagine that the prosecutor based her improper comments on privately held information that had not been introduced during trial.

As previously noted, appellant did not object to the prosecutor's expressions of her personal opinions regarding the defense witnesses' credibility. The trial judge was alert to the problem those expressions posed, however. Almost immediately after the rebuttal argument, the

---

(Emphasis added.)

3. With regard to Daniels, the prosecutor argued:

> Now, let's talk about Mr. Daniels, Earl Daniels, the other chess player. *Now, Mr. Daniels' testimony was incredibly straightforward. It was incredibly credible. He did not embellish.* He told you what he saw and again, he didn't tell you he saw everything. He told you that at the very moment of the stabbing, he was not looking. He acknowledged that. But he also told you what he saw immediately before the stabbing and what he saw immediately after the stabbing.... This is what Mr. Daniels testified to. This is what he saw. *It was an incredibly clear, unembellished account.*

(Emphasis added.)

4. Regarding appellant's credibility, the prosecutor began by stating, "first of all, with the defendant, you're being asked to accept the word of a convicted thief and a convicted drug dealer." An immediate defense objection was overruled; we shall address *infra* the propriety of the prosecutor's characterization of appellant as a convicted thief and drug dealer. The prosecutor continued:

> [E]veryone is saying he committed this crime. Clearly, out of all of the witnesses, the defendant has a motive to tell—not to tell the truth about what he did that night. Because if he told the truth about what he did that night, wouldn't he have to confess to the crime?
>
> Now, just because he's the defendant, doesn't mean he has a free license to get on the stand and tell you a false story. There's nothing in the law, nothing in the Judge's instruction that gives him that right just because he's the defendant. *The defendant clearly made false statements because he knows he's guilty. He had something to hide. And if he knows he's guilty, shouldn't that be enough for you, for you to find him guilty?*

(Emphasis added.)

judge instructed the jury to disregard expressions of personal opinion by counsel "concerning the fact whether a witness can be believed." [5] Although appellant moved for a mistrial on other grounds, he voiced no objection that the judge's instruction was inadequate to remedy the impropriety to which it was directed. Under the circumstances, including the strength of the government's case, we cannot conclude that the judge erred at all, let alone plainly erred, by doing no more than he did to dissipate any potentially adverse impact of the prosecutor's regrettable remarks.

■ 2. *Characterization of Appellant as a Convicted Thief and Drug Dealer.* Appellant argues that the prosecutor aggravated the impropriety of her personal opinion comments about him when she also told the jury that the defense was asking it "to accept the word of a convicted thief and a convicted drug dealer." See footnote 4, *supra.* Indeed, we have deprecated such loose name-calling, even when the defendant has testified and been impeached with prior convictions, because it tends "to blur the already murky distinction which the jury must draw between the use of evidence of prior crimes as a reflection of credibility and the use of such evidence as a denotation of criminal character." *Harris v. United States,* 430 A.2d 536, 539, 541 (D.C.1981) (quoting *Evans v. United States,* 392 A.2d 1015, 1026 (D.C. 1978)).[6] Instead of overruling appellant's

timely objection to the prosecutor's disparaging characterization, the trial judge should have cautioned the prosecutor to be more restrained and perhaps even instructed the jury to disregard the comment. Because appellant had testified and been impeached with convictions for, *inter alia,* receiving stolen property, shoplifting, and distribution of marijuana, the prosecutor was entitled to remind the jury of appellant's convictions during closing argument as part of her challenge to his credibility. *Jones v. United States,* 579 A.2d 250, 254 (D.C.1990) ("There is nothing inherently improper in the mere mention of a defendant's prior convictions in a prosecutor's closing argument, provided the defendant has testified and thereby placed his or her credibility in issue."). There is a significant distinction, however, between citing a defendant's prior convictions as bearing on the defendant's credibility and castigating the defendant as a criminal.

■ That said, it is important not to overstate the gravity or the impact of the impropriety and the trial judge's failure to acknowledge it. The reference was brief; the prosecutor did not dwell on appellant's criminal record; and she linked his "convicted" status to the creditworthiness of his "word." Especially because the prior offenses were non-violent ones, the comment "did not come close to suggesting that [appellant] had a propensity to commit the crime charged, which would make

---

5. The judge instructed as follows:
 Ladies and gentlemen, I wish to give you a few concluding instructions before you retire to deliberate. First, remember what I told you before the arguments, sometimes during the arguments, a lawyer for one party or another may have appeared to state a personal belief or opinion concerning the fact whether a witness can be believed.
 As I told you before the lawyers argued, the lawyers are not permitted to express such a personal opinion during argument.

The lawyers may only argue to you based on what the evidence shows. So if you think a lawyer expressed a personal opinion during argument, disregard the personal opinion and judge this case based only on the evidence.

6. In *Harris,* the prosecutor remarked that "evidence that he's a thief is introduced to tell you that he's not the kind of man you should believe when he gets up on the witness stand." 430 A.2d at 539.

this a very different case." *Lee v. United States*, 562 A.2d 1202, 1204 (D.C.1989). Moreover, the trial judge did instruct the jury in advance of argument on the proper, limited use it could make of appellant's convictions.[7] We think it fair to presume that the jury understood the prosecutor's subsequent reference to those convictions within the framework of this instruction. (It is noteworthy, also, that the judge provided the jury with a copy of his instructions for convenient reference during deliberations.) Even viewing the comment in the context of the prosecutor's other improper remarks, we are satisfied that appellant suffered no substantial prejudice. The trial judge therefore did not abuse his discretion in denying a mistrial. Appellant is not entitled to have his convictions overturned on this ground.

3. *Argument of Facts Not in Evidence.* "It is improper for an attorney to make an argument to the jury based on facts not in evidence or not reasonably inferable from the evidence." *Morrison v. United States*, 547 A.2d 996, 999 (D.C. 1988) (citations omitted). Conversely, an attorney plainly is "entitled to make reasonable comments on the evidence and urge such inferences from the testimony as will support the theory of the case." *Coreas v. United States*, 565 A.2d 594, 601 (D.C.1989) (internal quotation marks, brackets and citations omitted).

Appellant argues that "with no facts in evidence [in particular, no expert opinion] to support her argument, the prosecutor [improperly] speculated [that] the nature and 'angle' of the wound sustained by Anthony Jones could only have resulted from appellant attacking Jones in the manner that Jones testified, not from appellant acting in self-defense." We are not persuaded by this contention.

Jones testified that he was stabbed as he turned around to face appellant, who was standing nearby. Appellant testified that, acting in self-defense, he raised his knife and stabbed Jones when Jones "leaped" on him. Dr. Giordano, the surgeon who operated on Jones, testified that instead of going "directly backward," Jones's knife wound went "across the neck" from left to right. On the basis of this testimony, we think the prosecutor legitimately could argue that the sideways nature of the stab wound was consistent with Jones's version of events rather than appellant's version.

### III.

Some, though not all, of the challenged comments by the prosecutor in her rebuttal argument were improper. We do not condone them. Nonetheless, we have found no error by the trial judge entitling appellant to reversal. His convictions are hereby affirmed.[8]

7. The instruction was as follows:

 You have heard evidence that the defendant, Larry Finch has previously been convicted of crimes. A defendant's prior criminal conviction is admitted into evidence solely for your consideration in evaluating the defendant's credibility as a witness. The fact that the defendant was convicted of a crime in the past is not evidence that the defendant is guilty of the offense with which he is charged in this case. You must not draw any inference of guilt against the defendant from his prior conviction. You may only consider his prior conviction in evaluating the credibility of his testimony in this case.

8. Although neither party mentions it, we presume that the conviction on the lesser offense

should be vacated because the two offenses of conviction merge. Appellant may seek vaca-

tur by motion in the trial court following the issuance of our mandate.